UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SWAIN

CINDY JUROW,

          Plaintiff,

     v.

CIS COUNSELING CENTER, INC., BARBARA
PESKIN, AND BRIAN COHEN,

          Defendants.

06 CV 5583

CIVIL ACTION NO.

JURY TRIAL DEMANDED

## COMPLAINT

RECEIVED
JUL 24 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Cindy Jurow ("Jurow" or "Plaintiff"), by her attorneys, Duane Morris LLP, for

her Complaint against defendants CIS Counseling Center, Inc. ("CIS"), Barbara Peskin

("Peskin") and Brian Cohen ("Cohen") (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This action stems from the unlawful termination of Plaintiff from CIS in violation

of her federal, contractual and common law rights.  Specifically, Peskin and Cohen orchestrated

Jurow's discharge from CIS in violation of:  (i) Jurow's right not to be terminated at a time

designed to prevent her from vesting in her pension plan (ii) the terms of CIS's Bylaws; (iii)

Jurow's employment agreement; and (iv) Jurow's right to be free from tortious interference with

her employment agreement and business relations.  Jurow asserts claims pursuant to Section 510

of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and common

law.

## PARTIES

2.　　Plaintiff Jurow is a natural person residing at 66 West 94th Street, Apartment 19B, New York, NY 10025.

3.　　Defendant CIS is a not-for-profit corporation organized and existing under the laws of the State of New York, with its principal place of business at 111 John Street, Suite 930, New York, NY 10038. The principal purpose of CIS is to provide out patient mental health and addiction services at its offices and is overseen and licensed by the New York City Office of Mental Health.

4.　　Defendant Peskin is a natural person residing at 23 Applegreen Drive, Old Westbury, New York 11568.

5.　　Defendant Cohen is a natural person residing in Nassau County, New York.

## JURISDICTION AND VENUE

6.　　This Court has jurisdiction over Plaintiff's ERISA claim pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 1132(e), and over the common law claims pursuant to 28 U.S.C. § 1367.

7.　　Venue lies in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## BACKGROUND

8.　　Jurow and Peskin co-founded CIS in 1984, at which time Jurow became the Executive Clinical Director and Peskin became the Executive Administrative Director.

9.　　In 1986, Jurow and Peskin co-founded Counseling in Schools, Inc. ("Schools"), a not-for-profit corporation with which CIS shared office space. The purpose of Schools is to provide high quality counseling / mental health services, crisis counseling services, and professional development services on site in schools to children, families and school personnel

- 2 -

by receiving grants for funding from a variety of charitable organizations and the New York City Department of Education. Schools worked together with CIS to provide complimentary counseling services to those in need.

10.     Jurow and Peskin held the same positions in both CIS and Schools.

11.     Peskin and Jurow were the only two officers of both CIS and Schools, although they were denominated "Directors" instead of "President" or "Vice-President" since the title "Director" is more common in the not-for-profit mental health industry.

12.     Peskin and Jurow exercised all authority normally associated with company officers, including binding CIS and Schools in contracts, signing checks and making decisions fundamental to CIS's operations and direction. Peskin and Jurow were the only individuals working at either entity with such authority.

13.     Jurow remained the Executive Clinical Director for CIS for 20 years until her unlawful termination on December 21, 2005. Throughout this 20-year time span, Jurow devoted herself to CIS's success and development.

14.     Jurow's duties and responsibilities for CIS shifted over the years, but always included responsibility for all clinical cases, program development, on and off-site outreach, staff hiring, firing, training and development, recordkeeping, and client satisfaction. She had similar responsibilities for Schools.

15.     Amongst Peskin's primary duties and responsibilities for both CIS and Schools was to maintain the books and records of the organizations and to oversee their finances.

16.     CIS's reputation as a first rate counseling organization grew because of Jurow's input, direction and oversight and her ability to attract and retain top notch clinical staff.

17.     Effective December 14, 2002, Jurow's employment with CIS was governed by the terms of a 10 ½ year employment agreement (the "Agreement"), a copy of which is attached

- 3 -

hereto as Exhibit A. Pursuant to the terms of the Agreement, CIS agreed to pay Jurow the sum of $140,000 per annum, subject to annual adjustment in accordance with the greater of the CPI or 2.5%. CIS also agree to provide Jurow with an automobile, health insurance, a Rabbi Trust and a qualified pension plan (contributions to which were $40,000 per year).

18.     In or about the Winter of 2005, both a large charity and an individual in the mental health services business expressed an interest in taking steps to assume control over and grow and expand CIS. Peskin expected that if one of these deals preceded, management compensation would increase.

19.     At this time, Peskin began to bicker with Jurow, particularly with regard to Jurow's questioning of Peskin about potential improprieties in Peskin's handling of CIS's finances.

20.     Discussion ensued about the possibility of Peskin and Jurow voluntarily ending their mutual working relationship at CIS and Schools.

21.     A mutually acceptable agreement was never reached and both Jurow and Peskin continued to provide services for both companies. Both companies were, in turn, fully liable to Jurow and Peskin for their services pursuant to the terms of their employment agreements with each entity.

22.     Angered by this development, it appears that as early as May 2005, Peskin began to take matters into her own hands by fraudulently and illegally transferring substantial sums of money from Schools' bank accounts to CIS's, including charging back to Schools Jurow's CIS salary and making other monetary transfers without authority or a proper purpose.

23.     During the last week of July 2005, Peskin's husband, Arnold Peskin, sought to physically intimidate Jurow by yelling at her while encroaching upon her personal space.

29.     As Peskin and Cohen, a Board member of CIS, were acutely aware, effective
December 31, 2005, Jurow was to vest in CIS's 2005 calendar year pension plan contribution of
$40,000.

30.     By letter dated December 21, 2005, signed by Cohen, and which purported to be
effective said date, CIS notified Jurow that she was terminated "for substantial nonperformance
of your Employment Contract with CIS...relieving CIS of the obligation to perform under this
contract." (See Exhibit B.) This notification was plainly made without the authority of CIS's
Board, in utter violation of CIS's Bylaws. (See Exhibit C.)

31.     Thereafter, Peskin refused to allow Jurow access to School's books and records.
Ultimately, a court order from Justice Gammerman in New York Supreme Court was obtained
by Schools directing Peskin to turn over Schools' books and records to Jurow ("State Court
action"). A review of these records evidenced that Peskin fraudulently transferred out of
Schools' account to CIS substantial assets of Schools without authority or a proper purpose.
Schools is currently seeking CIS's and Peskin's return of all monies improperly removed by
Peskin from its account in the State Court action.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Violation of Section 510 of ERISA)

32.     Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1
through 31 above as though fully set forth herein.

33.     Peskin and Cohen orchestrated Jurow's formal termination and removal from
CIS's payroll on December 21, 2005 in order to prevent her from vesting in her 2005 pension
benefits on December 31, 2005 – a savings to CIS of $40,000.

34.     The pension plan which Peskin, Cohen and CIS interfered with is a qualified
pension benefit plan under ERISA.

35.     Defendants' actions violated Section 510 of ERISA.

36.     Jurow suffered damages as a result of Defendants' actions.

37.     Defendants are liable to Jurow for such damages, as well as attorneys' fees and costs.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST CIS

### (Declaratory Judgment)

38.     Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 37 above as though fully set forth herein.

39.     CIS's Bylaws make clear that two-thirds or a quorum of at least three members of the Board are necessary to terminate an officer of CIS.  (See Exhibit C.)

40.     CIS, at most, had approval from only two of its four Board members to terminate Jurow's employment from CIS.  Therefore, Jurow seeks a declaration from this Court that Jurow's termination violated the terms of the Bylaws and is null and void.

41.     As a result of this improper and unauthorized termination, Jurow seeks a further declaration from this Court that CIS owes to Jurow back wages, her 2005 calendar year pension plan contribution and all other benefits of the Agreement.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST CIS

### (Breach of Contract)

42.     Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 41 above as though fully set forth herein.

43.     CIS had an Agreement with Jurow governing her employment at the company.

44.     Jurow fully performed her obligations under the Agreement, and only stopped providing services to CIS upon Peskin's directive on August 30, 2005.

45.    CIS breached the Agreement by terminating Jurow's employment. The basis for Jurow's termination as set forth in Cohen's letter is false and unsupportable by the clear facts. In fact, the parties expressly agreed that the failure of Jurow to provide services to CIS after Peskin's August 30th directive would not constitute cause for violation of the Agreement precisely because Jurow was following Peskin's own directive not to report to CIS.

46.    Jurow suffered damages as a result of CIS's breach of the Agreement, including damages stemming from her unlawful and unjustified termination.

47.    CIS is liable to Jurow for her damages.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST PESKIN

#### (Tortious Interference with Business Relations)

48.    Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 47 above as though fully set forth herein.

49.    Peskin fraudulently and maliciously misrepresented to the Board that Jurow willfully failed to perform her duties for CIS.

50.    Peskin took this action with the clear intent to tortiously interfere with Jurow's employment relationship and Agreement with CIS and to procure Jurow's termination.

51.    Jurow suffered damages as a result of Peskin's tortious conduct, including damages resulting from her unlawful and unjustified termination.

WHEREFORE, Jurow respectfully requests that this Court enter judgment against Defendants (a) on her first cause of action, for damages in the amount of $40,000, plus interest, attorneys' fees, and costs; (b) on her second cause of action, declaring that Jurow's termination violated the terms of the Bylaws and is null and void; (c) on her second, third and fourth causes of action, for damages in an amount not less than $1,800,000, plus interest; and (d) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 24, 2006

DUANE MORRIS LLP

By:                

Eve I. Klein
Francine N. Nisim

380 Lexington Avenue
New York, NY 10168
Telephone: 212.692.1000
Facsimile: 212.692.1020

Attorneys for Plaintiff
Cindy Jurow